# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| LINDA SCHWARTZ, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-cv-00739 |
| | § | |
| KILOLO KIJAKAZI, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Plaintiff Linda Schwartz ("Schwartz") seeks judicial review of an administrative decision denying her applications for disability insurance benefits under Title II and Title XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Schwartz and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner").[1] *See* Dkts. 16, 18. After reviewing the briefing, the record, and the applicable law, Schwartz's motion for summary judgment is **GRANTED**, and the Commissioner's motion for summary judgment is **DENIED**. This case is remanded to the Social Security Administration for further proceedings.

## BACKGROUND

Schwartz filed applications for disability insurance benefits under Title II (November 15, 2017) and Title XVI (May 3, 2018) of the Act, alleging disability beginning on February 1, 2013. Her applications were denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is automatically substituted as a party under Federal Rule of Civil Procedures 25(d).

hearing and found that Schwartz was not disabled. Schwartz filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4)

whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Schwartz had not engaged in substantial gainful activity since February 1, 2013. *See* Dkt. 14-3 at 14.

The ALJ found at Step 2 that Schwartz suffered from "the following severe impairments: obesity, seizure disorder, disorders of the back, attention deficit/hyperactivity disorder (ADHD), fibromyalgia, mood disorder, right ulnar sensory neuropathy, and right carpal tunnel syndrome." *Id.*

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of Step 4, the ALJ determined Schwartz's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours in an 8-hour workday; and sit for six hours in an 8-hour workday with normal breaks. There should be only occasional fine fingering and gross handling with the non-dominant hand. There should be no climbing of ropes, ladders or scaffolds and only occasional stooping, crouching,

and negotiating stairs and ramps. There should be no working in proximity to hazards, such as dangerous machinery or unprotected heights and no driving. Mentally, in order to minimize stress, the work should be performed at a non-forced pace. The claimant can understand, remember and carry out detailed and simple repetitive tasks, but not complex tasks.

*Id.* at 24.

At Step 4, the ALJ found that Schwartz is capable of performing past relevant work as a courier and photographer. Based on the Medical-Vocational Rules, the ALJ explained that Schwartz is not disabled. *See id.* at 26–27. Nonetheless, the ALJ elicited testimony from a vocational expert ("VE"), supporting his Step 5 determination that Schwartz "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 28.

## DISCUSSION

Schwartz contends that remand is appropriate because the ALJ did not adequately assess her subjective complaints of pain and other symptoms.[2] I agree.

ALJs are tasked with reviewing and harmonizing voluminous administrative records, often containing conflicting medical records, firsthand testimony, and expert testimony. In the end, the ALJ must produce a written decision that memorializes his or her thinking for the review of a claimant, her attorney, and later, if necessary, a federal court. While carrying out this task, the ALJ relies on a myriad of guiding federal regulations. With respect to the issue of evaluating a claimant's subjective complaints of pain and other symptoms, the federal regulations and case law provide as follows.

"[T]he ALJ must [first] determine whether there is a medically determinable impairment that is capable of producing that pain." *Eovaldi v. Astrue*, 729 F. Supp. 2d 848, 862 (S.D. Tex. 2010). "Once the impairment is found, the ALJ evaluates

---

[2] Schwartz also argues that the RFC does not adequately account for her moderate limitation in maintaining concentration, persistence, and pace. I do not reach this argument.

4

the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities." *Gachter v. Colvin*, No. 4:13-CV-168-Y, 2014 WL 2526887, at *8 (N.D. Tex. June 4, 2014) (citing 20 C.F.R. § 404.1529(c) and SSR 96-7p, 1996 WL 37186, at *1). While an ALJ must consider subjective evidence relating to pain and other symptomology, it is within his or her discretion to determine their disabling nature. *See Chrisner v. Astrue*, 249 F. App'x 354, 356 (5th Cir. 2007). However, "[a]n ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and articulates reasons for discrediting the claimant's subjective complaints." *Gachter*, 2014 WL 2526887, at *9 (collecting cases). As one district court put it:

> It is not sufficient for an ALJ to make a single conclusory statement that the individual's allegations have been considered, that the allegations are or are not credible, or to simply recite the factors that are described in the Regulations for evaluating symptoms; rather, the ALJ's decision must contain specific reasons for the finding on credibility, supported by evidence of record, that are sufficiently specific to make clear the weight that the ALJ gave to the claimant's subjective complaints and the reasons therefor.

*Murphy v. Colvin*, No. CIV.A. 14-1110, 2015 WL 5060131, at *6 (E.D. La. Aug. 25, 2015).

Here, the ALJ recounted Schwartz's medical history in great detail before finding that she suffered from at least eight severe impairments. *See* Dkt. 14-3 at 14–20. Of importance here, the ALJ merely summarizes those records, offering very little unique analysis; in this way, to a reviewer, the ALJ's discussion of Schwartz's medical records is functionally the same as if the ALJ merely copied and pasted those records into the decision. The ALJ then described, in equal detail, Schwartz's testimony regarding the pain and other symptoms she experiences due to her severe impairments:

> The claimant testified as follows: a lot of the times the majority of her pain is in the shoulder, neck, and lower back. She gets a lot of pain that radiates down from the back to the feet. She lives with her two children ages 15 and 13. Her daughter does online school at home to help her at home. She forgets to turn off the stove. She also has seizures and her daughter helps her with those. She is not taking anything for seizures because she could not afford it. It has been four to five months since she last took it. She experiences two to three seizures per month. During a seizure, she is coherent and shakes pretty badly. Her hands claw up. The claimant testified that she is 5'4" and she weighs 212 pounds. *See* Hearing Testimony.
>
> The claimant testified that during the day, she helps her daughter with her schooling. If she needs to lay down, then her daughter helps her. She cleans as she can. Her daughter and neighbor goes grocery shopping. If she just needs a few things, she will go. She talks with her friends on the phone from other states or her neighbor comes over to visit sometimes. She has bible study at her house once a week for 30 minutes. She tries to exercise, but it hurts a lot. She walks to the mailbox, but when she gets back, she is swollen and twice as numb. The claimant stated that she used to take Adderall for attention deficit/hyperactivity disorder when she had insurance. She has trouble with her hands and drops things a lot. Her pinky, ring finger, and thumb are usually tingling. She is left handed.
>
> The claimant testified that she could sit for one to one and a half hours and then would have to lay down to get pressure off her back. During the day, she lies down for approximately four hours a day. She cannot lay in on position very long because it hurts too bad. She only gets a couple of hours of sleep at a time. It takes longer to cook and by the end, she is hunched over. She does not use any assistive device. The claimant stated she did not know how long it took to get back to normal. The episode can last twenty minutes. In regard to attention deficit/hyperactivity disorder, her memory is a problem. She forgets a lot of things. She could not do a job with only two to three steps because she would have to go back and ask them. She needs more supervision. *See* Hearing Testimony.
>
> The claimant testified that she can lift maybe five pounds. She could lift a gallon of milk if she needs too. Reaching overhead automatically sends pulses through her arms. It is horrible. Most of the time she can manage her personal hygiene. *See* Hearing Testimony.

*Id.* at 24–25. After describing all of Schwartz's complaints, the ALJ summarily declared:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As discussed above, in terms of the claimant's alleged complaints, medical evidence does provide that she would experience some limitations. However, there is no objective medical evidence to show that the severity would prevent her from doing a job that would follow the above outlined residual functional capacity assessment. To the extent they are consistent with the objective medical evidence, the claimant's subjective allegations have been considered and incorporated into the above outlined residual functional capacity. The assessment of the functional capacity gives the greatest possible consideration to her allegations.

*Id.* at 25. To be clear, the ALJ disregarded Schwartz's subjective complaints as inconsistent with the medical records without directing me to medical records supporting that determination. In other words, I don't know which medical records the ALJ found inconsistent with Schwartz's testimony. Without that direction, I cannot assess the validity of the ALJ's reasoning. Even if I did know the

6

specific medical records the ALJ relied on, I still wouldn't know which of Schwartz's many complaints the ALJ's inconsistency finding is directed towards. This leaves both me and the Commissioner's lawyers in the untenable position of guessing about the nature of the inconsistency. This won't do because the line between guessing and creating a post hac rationalization for the ALJ's decision is infinitesimally small, if not non-existent. Because I cannot pin down the ALJ's reasoning with certainty, I decline to engage in any post hoc rationalization. *See Parson v. Saul*, No. 3:20-CV-00173, 2021 WL 2899937, at *3 (S.D. Tex. July 9, 2021) ("I cannot consider post hoc rationalizations for an agency decision. (cleaned up)). The ALJ erred.

I must next determine whether the ALJ's error was harmless. An error is harmless "when it is inconceivable that a different administrative conclusion would have been reached absent the error." *McNeal v. Colvin*, No. 3:11-CV-02612-BH-L, 2013 WL 1285472, at *27 (N.D. Tex. Mar. 28, 2013). I am hesitant to declare the error here harmless because the ALJ has not explained his reasoning. As best as I can tell, certain combinations of Schwartz's subjective complaints, if accepted, could plausibly result in a finding of disability; and other combinations might lead to the opposite result. Given the uncertainty surrounding the ALJ's reasoning, I conclude that it is conceivable that the ALJ could make a different administrative decision. Accordingly, remand is appropriate.

## CONCLUSION

For the reasons provided above, Schwartz's motion for summary judgment is **GRANTED**, and the Commissioner's motion for summary judgment is **DENIED**. This case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

SIGNED this 16th day of August 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE